IN THE UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: COMMERCIAL MONEY CENTER EQUIPMENT LEASE LITIGATION,<br><br>AMERICAN MOTORISTS INSURANCE COMPANY, a Illinois corporation,<br><br>　　　　Plaintiff,<br><br><br>STERLING WAYNE PIRTLE, an individual; ANITA PIRTLE, an individual; RON FISHER, an individual; MARK FISHER, an individual; KELLY FISHER BUH, an individual; BRIAN McMICHAEL, an individual; ANTHONY & MORGAN SURETY INSURANCE SERVICES, INC. a California Corporation; RAFFERTY CAPITAL MARKETS LLC; a New York Corporation; and DOES 1-20,<br><br>　　　　Defendants.<br><br>(Originally filed as Case No. 02 CV 0218 BTM in the United States District Court, Southern District of California) | MDL Docket No. 02-CV-16003<br>Judge O'Malley<br><br>**AMERICAN MOTORISTS INSURANCE COMPANY'S COMPLAINT FOR DAMAGES;**<br><br>1.　BREACH OF INDEMNITY AGREEMENT;<br>2.　SPECIFIC PERFORMANCE OF INDEMNITY AGREEMENT;<br>3.　EQUITABLE INDEMNITY;<br>4.　EXONERATION;<br>5.　QUIA TIMET;<br>6.　VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE<br>7.　FRAUD AND CONSPIRACY TO DEFRAUD<br>8.　NEGLIGENCE AND NEGLIGENT NONDISCLOSURE<br>9.　BREACH OF FIDUCIARY DUTY<br>10.　FRAUD<br>11.　NEGLIGENCE AND NEGLIGENT NONDISCLOSURE |

Plaintiff, AMERICAN MOTORISTS INSURANCE COMPANY ("AMICO"), alleges as follows:

**JURISDICTION AND VENUE**

1. AMICO is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Illinois with its principal place of business in the State of Illinois.

2. AMICO is qualified to conduct, and does conduct, business in the State of California, as a surety.

3. Defendant STERLING WAYNE PIRTLE ("WAYNE PIRTLE") is, and at all times relevant hereto was, an individual domiciled in the State of Nevada. WAYNE PIRTLE is President of Commercial Money Centers ("CMC") and is an indemnitor with respect to those CMC transactions which are relevant hereto, which transactions occurred in substantial part in the City of Escondido, State of California.

4. Defendant ANITA PIRTLE ("ANITA PIRTLE") is, and at all times relevant hereto was, an individual domiciled in the State of Nevada. ANITA PIRTLE is an indemnitor with respect to those CMC transactions which are relevant hereto, which transactions occurred in substantial part in the City of Escondido, State of California.

5. Defendant Ron Fisher ("Ron Fisher") is, and at all times relevant hereto was, an individual domiciled in the State of California or the State of Florida. Ron Fisher is a principal owner and former officer of CMC.

6. Defendant Mark Fisher ("Mark Fisher") is, and at all times relevant hereto was, and individual domiciled in the State of California. Mark Fisher was the chief operating officer of CMC.

7. Defendant Brian McMichael ("Brian McMichael) is, and at all times relevant hereto was, an individual domiciled in the State of California or the State of Nevada. Defendant McMichael was the chief operating officer of CMC's servicing subsidiary, Commercial Servicing Corporation ("CSC").

2

8. Defendant Kelly Fisher Buh ("Kelly Buh") is, and at all times relevant hereto was, and individual domiciled in the State of California, and an employee of CMC.

9. Defendant Michael Anthony is, and at all times relevant hereto was, and individual domiciled in the State of California, and a principal of Anthony & Morgan Surety Insurance Services.

10. Defendant Anthony & Morgan Surety Insurance Services, Inc., is and at all times relevant herein was, a corporation or other business entity doing business as an insurance and surety agent or broker in the State of California.

11. Defendant Rafferty Capital Markets, LLC, is and at all times relevant herein was, a corporation doing business in the State of New York as an investment broker.

12. CMC and CSC were defendants at the time of the filing of the original complaint in this action. CMC and CSC subsequently filed for bankruptcy protection and an automatic stay applies to prosecution of this action against CMC and CSC. Plaintiff cannot seek leave to amend this complaint to reassert the original causes of action against CMC and CSC until such time as the stay is lifted. Defendant Does 1-20 are currently unknown to Plaintiff or if known, it is unknown if a cause of action exists against them. Plaintiff will seek leave for amend upon ascertaining the names of these Defendants.

13. The amount of controversy as to each of the claims asserted herein exceeds $75,000.

14. This Court has jurisdiction of this matter under 28 U.S.C. sections 1332 and 1367(a), and venue in this district is proper under 28 U.S.C. 1391(a).

## GENERAL ALLEGATIONS

15. AMICO is informed and believes, and on that basis alleges, that each of the defendants is the principal, agent, servant, employee, or alter ego of each of the other defendants, and was acting in that capacity at all times relevant hereto.

///

///

## CMC'S LEASING PROGRAMS

16. CMC purports to operate as a full service leasing company offering a variety of leasing programs.

17. As part of its leasing programs, CMC purports to purchase various equipment of use to both individuals and small to mid-size businesses, and to then lease that equipment to third party individuals or businesses.

18. Upon information and belief, CMC operates its leasing programs in its own name, and through its subsidiaries and affiliates, through offices located in Escondido, California.

19. CMC groups its leases into lease pools. CMC's lease pools include varying numbers of leases.

20. Upon information and belief, CMC sells the stream of payments provided by the leases in a given pool as an investment to a lending institution.

## SURETY BONDING OF CMC'S LEASING PROGRAMS

21. In order to make the lease pool a more attractive investment, CMC obtains surety bonds to guarantee each lessee's performance of its lease obligations.

22. Beginning in or about June, 1998 and continuing through December, 2001, CMC requested AMICO, as surety, to issue lease bonds on its behalf in connection with various lease pools.

23. AMICO, as surety, issued lease bonds ("the Bonds") on behalf of CMC's lessees, as principals, and in favor of CMC, as obligee.

24. Ultimately, AMICO issued over 270 separate lease Bonds, guaranteeing lease obligations grouped into at least seven different lease pools.

## CMC'S INDEMNITY AGREEMENT

25. On or about June 29, 2001, in partial consideration for AMICO's issuance of the Bonds, and as an inducement to AMICO to issue Bonds, WAYNE PIRTLE and ANITA PIRTLE, executed a written Indemnity Agreement for the benefit of AMICO (the "Indemnity Agreement"). A true and correct copy of the Indemnity Agreement which AMICO executed is

attached hereto as Exhibit "A" and is incorporated by this reference as though set forth fully herein.

26. The Indemnity Agreement provides, among other things, that CMC and the PIRTLES will indemnify and save harmless AMICO from and against all losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, AMICO's issuance of bonds at CMC's request.

27. The Indemnity Agreement also provides that the PIRTLES will, on AMICO's demand, pay to AMICO, or deposit with AMICO as collateral, an amount sufficient to discharge any claim made against AMICO on any of the Bonds.

28. The Indemnity Agreement also gives AMICO the right to unrestricted access to the PIRTLES' books, records and accounts for the purposes of examining and copying the accounts.

29. In executing the Indemnity Agreement, the PIRTLES explicitly represented and warranted therein that each of them is and was specifically and beneficially interested in obtaining each Bond which AMICO issued.

## THE SALES AND SERVICING AGREEMENTS

30. CMC sold the stream of lease payments in a given pool to investors pursuant to a "Sale and Servicing Agreement" or, in the case of investor Bluebonnet Bank only, a "Contribution and Servicing Agreement." Under the Sale and Servicing Agreement, CMC also purported to sell and transfer to investors its rights to payment under AMICO's Bonds.

## CLAIMS MADE AGAINST AMICO

31. Beginning in late December 2001 through February of 2002, AMICO received bond claims from six of CMC's investors, stating that CMC was delinquent in making payment to the investors on seven investment lease pools. The investors who have made bond claims

5

against AMICO, the lease pools upon which they have made claims, each in excess of the jurisdictional amount of this court are:

1. Bluebonnet Bank Lease Pool 1998-1-1
2. GECC, as assignee of Riverway Bank Lease Pool 1998-2-3
3. Ameriana Bank Lease Pool 2001-4-2
4. Lakeland Bank Lease Pool 2001-3-4
5. Lakeland Bank Lease Pool 2001-3-3
6. United Security Bank Lease Pool 2001-6-1
7. Huntington Bank, as purported assignee of Guardian Capital Lease Pool 2001-21-12

To date, AMICO has made payments pursuant to reservations of rights to five of these investors in the amount of approximately $2,712,608. AMICO has also incurred expenses and fees, in an amount to be proven at trial, to review and investigate the claims of the Investors.

**AMICO'S DEMAND TO CMC AND THE PIRTLES**

32. AMICO has demanded that the PIRTLES procure AMICO's discharge from the Bonds, or deposit collateral with AMICO in an amount sufficient to discharge the claims made against AMICO, and/or otherwise fulfill their respective obligations to AMICO under the Indemnity Agreement.

33. AMICO has also demanded that the Pirtles remit payment, under the applicable Sale and Servicing Agreements, to the Investors.

34. The PIRTLES have refused, and continue to refuse to honor their obligations to AMICO pursuant to the Indemnity Agreement.

35. AMICO has fully performed and satisfied all conditions precedent under the Indemnity Agreement prior to initiating the present proceedings against the PIRTLES.

36. The PIRTLES refused, and continue to refuse, to respond to AMICO 's demands.

///
///
///
///

## FIRST CAUSE OF ACTION

### (Breach of Indemnity Agreement against All Defendants)

37. AMICO realleges and incorporates by reference paragraphs 1 through 36 as though set forth fully herein.

38. The PIRTLES' failure to indemnify AMICO as required under the Indemnity Agreement, and to deposit collateral with AMICO as required under the Indemnity Agreement, and to grant AMICO access to the PIRTLES' books, records and accounts constitute a breach or breaches of the Indemnity Agreement.

39. As a direct and proximate result of the PIRTLES' breach of the Indemnity Agreement, AMICO is being irreparably harmed, and has been and will be incurring liability, losses, costs and damages, including attorneys' fees, in defending claims and lawsuits under the Bonds, and the prosecution of this action.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Specific Performance of Indemnity Agreement against All Defendants)

40. AMICO realleges and incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

41. AMICO is entitled to an order compelling the PIRTLES, and each of them, to specifically perform pursuant to the terms of the Indemnity Agreement by, among other things, indemnifying, saving and holding harmless AMICO from and against all losses, expenses, and claims related to the Bonds which AMICO issued; obtaining AMICO's discharge from the Bonds; depositing collateral with AMICO in an amount sufficient to discharge the claims made against AMICO; and/or providing AMICO with access to the PIRTLES' books, records and accounts.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Equitable Indemnity against All Defendants)

42. AMICO realleges and incorporates by reference paragraphs 1 through 41 as though set forth fully herein.

43. By reason of the foregoing, AMICO has incurred and will continued to incur losses, costs, damages, attorneys' fees and expenses by reason of or in consequence of the Bonds it issued at the PIRTLES' request, and in satisfying CMC's principal obligations.

44. The PIRTLES, and each of them, are obligated by law and equity to indemnify AMICO for the full extent of its losses, costs, damages, attorneys' fees and expenses.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Exoneration against All Defendants)

45. AMICO realleges and incorporates by reference paragraphs 1 through 44 as though set forth fully herein.

46. By virtue of having made payments and incurring losses, costs, damages, attorneys' fees and expenses, and by virtue of having to make further payments and incur further losses, costs, damages, attorneys' fees and expenses, by reason of, or in consequence of the Bonds it issued at CMC and the PIRTLES' special instance and request, AMICO is entitled to exoneration from the PIRTLES for such losses, costs, damages, attorneys' fees and expenses.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (*Quia Timet* against Defendants Wayne Pirtle and Anita Pirtle)

47. AMICO realleges and incorporates by reference paragraphs 1 through 46 as though set forth fully herein.

48. AMICO fears that it will continue to incur immediate and substantial losses, costs, damages, attorneys' fees and expenses by reason of, or in consequence of, the Bonds it issued at CMC and the PIRTLES' special instance and request.

49. The PIRTLES are obligated, under the doctrine of *Quia Timet*, to post collateral security with AMICO for all losses, costs, damages, attorneys' fees and expenses incurred by reason of, or in consequence of, the Bonds it issued at CMC and the PIRTLES' special instance and request.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**(Violation of California Business and Professions Code § 17200 against Defendants Wayne Pirtle, Anita Pirtle, Ron Fisher, Mark Fisher, Kelly Fisher Buh, and Brian McMichael and Does 1-10)**

50. AMICO realleges and reincorporates by reference paragraphs 1 through 49 as though set forth fully set forth herein.

51. Plaintiff alleges that Defendants conducted the business of CMC and CSC in a fraudulent, deceptive and unethical manner, in violation of California Business and Professions Code § 17200, as follows:

    a. Defendants represented that lease transactions whose income stream was sold to investors and on which Defendant obtained surety bonds from AMICO were real transactions, where in fact the leases were either sham transactions with CMC subsidiaries, or non-consummated transactions with individual lessees.

    b. Defendants conspired to submit incorrect and materially false monthly reports to investors, to hide the fact that leases were not producing income;

9

    c.    Defendants used payments from later sold lease pools to fund either monthly income streams or purchase of leased equipment on prior pools, conducting their businesses essentially as a Ponzi scheme.

    d.    Defendants commingled payments across lease pools and did not maintain payments in dedicated accounts across the pools, as required by the Sales and Servicing Agreements, in order to maintain the appearance of solvency, and support the Ponzi scheme.

    e.    Defendants diverted payments and converted investment funds for their personal use, at times in which CMC was insolvent.

WHERE, AMICO prays for judgement as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

**(Fraud and Conspiracy to Defraud Against Defendants Wayne Pirtle, Anita Pirtle, Ron Fisher, Mark Fisher, Kelly Fisher Buh, and Brian McMichael and Does 1-10)**

52.     AMICO realleges and incorporates by reference paragraphs 1 through 51 as though fully set forth herein.

53.     Defendants at all times herein were officers and representatives of CMC and CSC, who knew that materially false and misleading information concerning CMC's finances and financial success, default rates, lack of bond claims, and the incorrect information concerning sham and unconsummated lease transitions, would be disclosed to investors in order to induce funding for lease pools, and to sureties such as AMICO, to induce bonding for lease pools. Defendants, through representatives Wayne Pirtle and Mark Fisher, have explicitly admitted that CMC's officers and employees did not disclose defaults to sureties on report timely bond claims to sureties, because doing so would prevent defendants from obtaining future funding or bonding, and thus prevent continuation of CMC's business activities.

10

54. The Defendants and each of them, conspired to present materially false information to AMICO, for their own economic benefit, knowing that AMICO would rely on such information in issuing its bonds.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

**(Negligence and Negligent Nondisclosure of Material Facts Against Michael Anthony and Anthony & Morgan Insurance Services and Does 11-15)**

55. AMICO realleges and incorporates by reference paragraphs 1 through 54 as though fully set forth herein.

56. Defendants Michael Anthony and Anthony & Morgan Surety Insurance Services (collectively "Anthony") sold bonds and insurance policies on behalf of CMC through various sureties and insurers, including AMICO.

57. Defendants received payments in the form of premiums from AMICO, and commissions from CMC, for each transaction.

58. On or about February 13, 2001, Defendant Anthony received a telefax from investor/broker Blaine Tanner of Guardian Capital. The telefax contained a packet of information received from an anonymous source, and directed to the "Fraud Unit" of Guardian Capital. A letter within the packet stated as follows:

> "Dear Sir/Madame: You are BEING SCAMED (sic) out of MILLIONS. I am compelled to bring to your attention a financial scam involving a General Insurance Agent located in San Clemente, CA and an Escondido finance company.
>
> In addition to advertising for little old ladies to invest with them, C.M.C. has sold millions of dollars in equipment leases to Federally insured Institutions

11

and Pension Funds. They have an insurance agent who issues a Surety Bond (his letter is enclosed) with each transaction that supposedly guarantees the payment to the Bank in the event of default by the customer. To date, although a large percentage of customers are in default, C.M.C. has not filed their first claim with the Surety Company. HERES [sic] HOW IT WORKS. C.M.C. is in a position whereas all the Banks [sic] payments come directly to C.M.C. (that's really scary) I have enclosed the D & B reports on the principles [sic] of C.M.C. so you will see how scary that actually is. C.M.C. a [sic] rewrites the payments to the respective Bank. C.M.C. is making up the short fall in payments and the Surety Company is feeling warm and fuzzy that these guys really know what they are doing. EVENTUALLY, when it is no longer profitable for C.M.C. to make the payments Fisher and Pirtle will be long gone. It's a Ponzi scheme only more sophisticated. All C.M.C. profits are deposited offshore

. . .

I would respectfully suggest that you alert your member Banks and advise them not to continue funding this program until you have had time to verify the enclosed information."

  59. Defendant Michael Anthony and Anthony & Morgan Insurance Services knew that the information contained in this letter was material to the existing 1998 lease pools bonded by AMICO, as well as to any future lease pools to be bonded by AMICO. The standard of care customary for insurance agents and brokers required Michael Anthony to disclose the allegations made in the letter to AMICO.

  60. Defendant Michael Anthony has admitted that he failed to disclose the information to AMICO or other sureties. Further, Anthony acted as agent for five pools bonded by AMICO <u>after</u> receiving notice of the allegations of improper conduct, while at all times representing to AMICO that the financial affairs of CMC were in good order.

61. AMICO relied to its detriment upon the representations of Anthony and material nondisclosure of Anthony. Had AMICO received information concerning the allegations of impropriety, AMICO would have investigated the allegations, determined the allegations to be true, and not issued bonds as to any further pools.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## NINTH CAUSE OF ACTION

**(Against Michael Anthony and Anthony & Morgan Insurance Services for Breach of Fiduciary Duty and Does 11-15)**

62. AMICO realleges and incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63. Defendants Michael Anthony and Anthony & Morgan Insurance Surety Services, as appointed agent of AMICO, owed a fiduciary duty to AMICO to disclose any material allegations of impropriety pertaining to bond obligees and principals. Defendants' failure to disclose the information, as described in paragraphs 60 through 62 above, is a breach of fiduciary duty.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## TENTH CAUSE OF ACTION

**(Against Michael Anthony and Anthony & Morgan Surety Insurance Services for Fraud and Does 11-15)**

64. AMICO realleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65. AMICO, on information and belief, alleges alternatively that Michael Anthony's failure to disclose the material allegations of impropriety against CMC to AMICO, was an

intentional attempt to deceive AMICO into issuing further bonds, for Anthony's economic benefit, on which AMICO relied to its detriment.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION

**(Against Rafferty Capital Markets, LLC and Does 15-20 for Negligence and Negligent Nondisclosure of Material Facts)**

66. AMICO realleges and incorporates by reference paragraphs 1 through 65 as though fully set forth herein.

67. Defendants Rafferty Capital Markets LLC ("Rafferty"), is a broker who sold investment pools for CMC to investors. Plaintiff is informed and believes that Rafferty solicited investment for Lakeland Pool 2001-3-3, Lakeland Pool 2001-3-4, and Ameriana Pool 2001-4-2, whose leases were bonded by AMICO. Plaintiff is currently unaware if Defendant acted as broker on any other AMICO bonded pools.

68. Plaintiff alleges on information and belief, based on a declaration filed by CMC/CSC officer Brian McMichael that Rafferty also received an anonymous letter accusing CMC of illegal and unethical business practices, at some time prior to April, 2001. Plaintiff is unaware of the precise contents of the letter.

69. Plaintiff alleges that, after receipt of the letter, Defendant continued to seek investors for CMC's investment pools without disclosing the allegations of improper conduct either to the investors, or to the sureties for each pool such as AMICO.

70. Defendant specifically emphasized in marketing the pools to investors, that the lease were bonded by surety companies. Therefore, Defendants had direct knowledge and could anticipate that sureties might suffer losses if the allegations of improper conduct against CMC

were true. Nevertheless, Defendant chose not to reveal the allegations to investors or AMICO, but continued to market the pools for their own economic benefit.

71. Had Defendant disclosed the allegations to AMICO, AMICO would have investigated the allegations, determined the allegations to be true, and not issued the Bonds.

72. AMICO has been damaged as a direct result of Defendants failure to disclose the allegations in an amount equal to payments made to date under the Bonds on pools brokered by Raffety, AMICO's costs and expenses in investigation and defending claims under the bonds, and any amounts which AMICO is held responsible to pay to the Investors.

WHEREFORE, AMICO prays for judgment as hereinafter set forth.

## PRAYER

WHEREFORE, AMICO prays for judgment as follows:

<u>On all causes of action</u>

    a. For damages according to proof at trial, including all losses paid by AMICO and which AMICO maybe be found liable to pay on Bonds, and all fees and expenses incurred by AMICO in investigating claims or defending lawsuits on the Bonds;

    b. For prejudgment interest thereon at the legal rate;

    c. For reasonable attorneys' fees and expenses incurred herein;

    d. For costs of suit herein;

    e. For such other and further relief as this Court may deem necessary and proper and;

<u>On the third, fourth and fifth causes of action only</u>

    f. for an order requiring defendants Wayne Pirtle and Anita Pirtle to perform specifically the terms and conditions of the Indemnity Agreement, to deposit collateral to cover AMICO's losses and to exonerate AMICO.

///

///

///

## **JURY DEMAND**

Plaintiff AMICO hereby demands trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: December 23, 2002                                    Respectfully submitted by,

                                                            GASCOU HOPKINS LLP


                                                            */s/ Ronald W. Hopkins, Esq.*
                                                            Ronald W. Hopkins, Esq.
                                                            rhopkins@gascouhopkins.com
                                                            Christian J. Gascou, Esq.
                                                            cgascou@gascouhopkins.com
                                                            Gascou Hopkins LLP
                                                            10990 Wilshire Blvd., Suite 1280
                                                            Los Angeles, CA 90024
                                                            Telephone:    (310) 445-1816
                                                            Attorneys for American Motorists Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2002, the foregoing **AMERICAN MOTORISTS INSURANCE COMPANY'S COMPLAINT FOR DAMAGES** was filed electronically. Notice of this filling will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


Dated: December 23, 2002                                   Respectfully submitted by,

                                                           GASCOU HOPKINS LLP


                                                           */s/ Ronald W, Hopkins, Esq.*
                                                           Ronald W. Hopkins, Esq.
                                                           rhopkins@gascouhopkins.com
                                                           Christian J. Gascou, Esq.
                                                           cgascou@gascouhopkins.com
                                                           Gascou Hopkins LLP
                                                           10990 Wilshire Blvd., Suite 1280
                                                           Los Angeles, CA 90024
                                                           Telephone:    (310) 445-1816
                                                           Attorneys for American Motorists
                                                           Insurance Company